Lillian M. Jones
2436 Oahu Avenue
Honolulu, Hawaii 96822
Tel. No. (808) 282 - 0676
Fax    (808) 536 - 2438
E-mail: Adaoha1@aol.com

Plaintiff in Pro Per

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 2 2007

at 3 o'clock and ⌒ min P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Lillian M. Jones<br><br>Plaintiff,<br><br>vs.<br><br>Hawaii Residency Program Inc., University of Hawaii John A. Burns School of Medicine, Department of Psychiatry, Naleen Andrade, M.D., Courtenay Matsu, M.D., D. Christian Derauf, M.D. Terry Lee, M.D., Iqbal Ahmed, M.D., Sheila Schiel<br><br>Defendants. | Civil No. CV07 00015 HG BMK<br><br>COMPLAINT, DEMAND FOR JURY TRIAL, EXHIBITS "A" - "AA"; SUMMONS |

## **COMPLAINT**

Plaintiff Lillian M. Jones, as and for her complaint against defendants Hawaii Residency Program, University of Hawaii John A. Burns School of Medicine, Department of Psychiatry, Naleen

1

Andrade, M.D., Courtenay Matsu, M.D., D. Christian Derauf, M.D., Terry Lee, M.D., Iqbal Ahmed, M.D., Sheila Schiel hereby alleges:

1. This action arises under the Fourteenth Amendment codified at U.S.C 42 Section 1983.

2. <u>Jurisdiction.</u> This Court has jurisdiction pursuant to 28 U.S.C. Section 1331 with defendants acting as agents of the state.

3. <u>Venue.</u> Venue is proper in this judicial district in that the defendants who, acting as agents of the state and on their own individual behalf, violated property and liberty rights guaranteed by the fourteenth amendment to the United States Constitution, committed intentional interference with contractual relations and committed and continue to commit intentional tort as evidenced by slander, libel, defamation of title, and fraud.

4. The plaintiff is a United States citizen whose residence is in the City and County of Honolulu, State of Hawaii.

5. Defendants Naleen Andrade, M.D., Courtenay Matsu, M.D., D. Christian Derauf, M.D. Iqbal Ahmed, M.D., are residents and citizens of the City and County of Honolulu, State of Hawaii, and defendant Terry Lee, M.D, is a resident of Seattle, Washington. Plaintiff is unaware of defendant Sheila Schiel's current residence.

6. Defendants Hawaii Residency Program, Inc., University of Hawaii John A. Burns School of Medicine and Department of Psychiatry, are Hawaii State institutions in the City and County of Honolulu, State of Hawaii.

### Factual Allegations

7. Plaintiff, Lillian M. Jones, is a former resident physician (a true and accurate copy of curriculum vitae through 2006 is attached

2

hereto as **Exhibit A**) previously enrolled in training in the Triple Board Program of the Hawaii Residency Program, Inc. (hereinafter referred to as HRP) affiliated with the John A. Burns School of Medicine in the State of Hawaii. Plaintiff's initial contract with HRP was for 1 year. HRP and plaintiff entered into new contracts each year with the last such contract dated January 9, 2004, which was for the period January 14, 2004 through January 13, 2005. The written contract is entitled "Agreement for Appointment to Residency Training." A true and acute copy of this last contract is attached as **Exhibit B**. Pursuant to that agreement, HRP, the University of Hawaii Affiliated Hospitals Child and Adolescent Psychiatry Residency Training Program agreed to train plaintiff through January 13, 2005 as a level 5 resident. HRP interfered with its contractual relationship with plaintiff by not fulfilling its commitment to train her; thereby, making her ineligible to become board certified in each discipline. Plaintiff has exhausted every means within the University of Hawaii/Hawaii Residency Program's (HRP) system to bind representatives of HRP to comply with its written contract to provide a suitable training program and educational environment in accordance with the provisions of Essentials of Accredited Residencies of the Accreditation Council for Graduate Medical Education (ACGME). Instead defendants without just caused terminated plaintiff's training forfeiting years of preparation for and years of specialized board eligibility in chosen professions, based upon false accusations. The plaintiff's unique specialty training career is offered to much less than 0.01%, of residents each year who enter the National Residency Match Program. Per contract an attempt was made to resolve irresolvable

issues via Dispute Prevention Resolution, in which HRP refused to participate. Based upon wording of the contract a motion to compel arbitration was denied by a circuit court judge on July 28, 2006.

8. On May 13th 2004, plaintiff was given a preliminary notice of dismissal from the triple board training program without procedural due process. In fact, on June 2, 2004, 63 days from the incident in question plaintiff was permitted to tell her version of events. This apparently was just courtesy behavior as a written decision had already been made and given to plaintiff 20 days before plaintiff shared her version clearly violating being heard in a reasonable time and in a reasonable manner. The decision to dismiss plaintiff from training was made based upon a single incident in plaintiff's fifth and final year of training. A true and accurate copy of preliminary dismissal letter is attached as **Exhibit C.**

9. On May 26, 2004, plaintiff wrote letters to three triple board directors in response to the dismissal letter given to plaintiff without an opportunity of a defense to inaccurate memo submitted by D. Christian Derauf, M.D. A true and accurate copy is attached as **Exhibit D.**

10. On June 2, 2004, at a meeting with the directors of triple board requested by plaintiff, who was accompanied by pediatric advisor, Dr. Louise Iwaishi, D. Christian Derauf, M.D., who submitted an inaccurate testimonial memo (a true and accurate copy is attached as **Exhibit E**) to plaintiff's file verified that plaintiff's version of events was accurate as opposed to what he stated ncluded in his written memo. On June 9, 2004, plaintiff received a letter continuing to

4

honor her dismissal from the triple board program. A true and accurate copy of letter is attached as **Exhibit F**.

11. On July 22, 2004, plaintiff was granted an in house hearing by an independent body chosen by the program directors that plaintiff made allegations against for unfairness. Plaintiff appealed to the executive director of HRP to become involved or to involve the dean of the John A. Burns School of Medicine. Discovery of fraud was made at the in house hearing when D. Christian Derauf, M. D., then pediatric program director submitted a written statement that plaintiff never sought his assistance on the pediatric case in question. This directly contradicts a statement he submitted to plaintiff's file 3 months earlier. A true and accurate copy of Dr. Deruaf's testismony is attached as **Exhibit G**.

12. On August 18, 2004, an unsigned letter addressed to the in-house hearing panel presumably from the leaders of Triple Board used coercive language (particularly the last paragraph) to influence the members of the hearing panel. A true and accurate copy is attached as **Exhibit H**.

13. In spite of fraudulent statements submitted by the pediatric program director to the in-house hearing committee, the independent hearing body ruled that plaintiff not be dismissed from residency training. A true and accurate copy is attached as **Exhibit I**.

14. On September 1, 2004, following the hearing panel's submission of recommendations to the directors of triple board a revised child and adolescent psychiatry Scientific Forum/Case Conference/Journal Club schedule included plaintiff on the spring

2005 schedule where plaintiff had not been included before. This indicates intent to continue plaintiff's training in the triple board program. A true and accurate copy is attached as **Exhibit J.**

15. On September 9, 2004, a letter from the department of pediatrics which is dated May 21, 2004, was mailed to plaintiff again requesting plaintiff to "let us know whether or not you want to continue your clinical teaching assistant position with pediatrics." This was mailed out after the hearing panel submitted its recommendations. A true and accurate copy is attached as **Exhibit K.**

16. On September 16, 2004, plaintiff received a letter from the directors of triple board informing plaintiff of a need to investigate charges that plaintiff "may have violated your contract subsequent to your suspension..." A true and accurate copy is attached as **Exhibit L.**

17. On September 22, 2004, plaintiff responded to allegations of possible violations of suspension. A true and accurate copy is attached as **Exhibit M.**

18. On September 30, 2004, plaintiff received a letter from the triple board directors who were unable to substantiate allegations of plaintiff violating her contract. The directors went on to say that "no adverse or unfavorable action will be taken as a consequence of this matter involving GT." A true and accurate copy of letter is attached as **Exhibit N.**

19. On October 8, 2004, the directors of psychiatry and child and adolescent psychiatry offered an amendment contract to plaintiff to train in adult psychiatry only, after the aforementioned were noted, allegedly based upon false testimony that the plaintiff poses a danger

in working with children.  A true and accurate copy of letter is attached as **Exhibit O.**  This arbitrary abuse of authority is egregious and has no regard for a process of redress put in place by the University of Hawaii affiliate's HRP and violates substantive due process.  Furthermore, the department of psychiatry arbitrarily gave 2.5 months of credit to plaintiff who had successfully completed 9 months in Child and Adolescent Psychiatry.  A true and accurate copy is attached as **Exhibit P.**

20.  Plaintiff refused to sign the unilaterally amended contract. A true and accurate copy of letter from plaintiff is attached as **Exhibit Q.**

21.  Also of note, on October 8, 2004, plaintiff received a congratulatory letter urging plaintiff to apply for an unrestricted Hawaii medical license, at the expense of the department, presumably to placate plaintiff while attempting to overhaul plaintiff's career path under the guise of dangerousness to the pediatric population.  A true and accurate copy is attached as **Exhibit R.**

22.   Around August 2006, defendants in the department of psychiatry who urged plaintiff to apply for a permanent medical license on October 8, 2004, later used information well known to them prior to October 8, 2004, as the very basis for the Hawaii Board of Medical Examiners to deny a license to plaintiff to practice medicine in the state of Hawaii given plaintiff did not comply to attempted arbitrary career changes forced upon her by the Department of Psychiatry.

23.  Hawaii State Board of Medical Examiners denied plaintiff a license to practice medicine in the state of Hawaii in spite of letter

submitted from the chairperson of the in house hearing committee that stated that plaintiff had been exonerated of the charges brought against her by the pediatric program director specifically and HRP generally. A true and accurate copy of letter is attached as **Exhibit S.**

24. The denial letter for plaintiff to practice medicine in the state of Hawaii from the Hawaii Board of Medical Examiners is baseless and replete with precise wordings of other letters from the Department of Psychiatry. A true and accurate copy of letter is attached as **Exhibit T.**

25. Around the end of October 2004, residents, fellows and graduates of the Hawaii Residency Program petitioned Drs. Andrade, Bell, Derauf, Matsu, Lee and Rudoy, as well as, Executive Director of HRP Sheila Schiel to fully reinstate plaintiff to triple board training. A true and accurate copy is attached as **Exhibit U.**

26. On November 5, 2004, plaintiff again appealed to the Executive Director of HRP seeking intervention on her behalf and making known the false accusations made against her by the pediatric program director. A true and accurate copy is attached as **Exhibit V.**

27. On November 16, 2004, when plaintiff refused to go to an adult training site in spite of not signing the offered amended contract to train in adult psychiatry only, the department of psychiatry instituted a programmatic protocol of intentional emotional distress. Plaintiff was banned from publicly funded state and federal institutions, was barred from attending lectures though she was told her training would continue with patient restrictions, had her parking pass deactivated to

eliminate departmental sponsored parking at Queens hospital, and had her invitation to the department's Christmas party revoked. Additionally, when she went to Queens Counseling Services to pick up materials, she was immediately notified that she was not permitted in the building. Furthermore much valued patient relationships of plaintiff with her patients were severed without a courtesy notification from plaintiff.

28. On November 17, 2004 a baseless letter, given the ruling of the in house hearing committee, addressed from Raul Rudoy, M.D. (Department Chair, Pediatric Residency Program), Courtenay Matsu, M.D., and Terry Lee, M.D. (who was no longer employed by the University of Hawaii at the time the letter was dated) was sent to "All Training Sites", notifying them of plaintiff's permanent suspension from all resident training activities. Of note, this letter did not contain any signatures. Furthermore this proclamation lowers the standing of plaintiff among fellow physicians affiliated with the university and in the community. A true and accurate copy is attached as **Exhibit W.**

29. Plaintiff hired attorney Carl M. Varady to represent her to help resolve violations committed by HRP. Attached is a complete and accurate copy of his initial letter to HRP dated December 16, 2004, outlining constitutional violations committed by HRP. A true and accurate copy is attached as **Exhibit X.**

30. During the summer of 2005, plaintiff was turned down for a job to work as an unlicensed physician under a license physician because of the licensed physician's fear of what could happen to him by hiring plaintiff who had 'fallen out of favor' with the chair of the

department of psychiatry; hence, negatively impacting plaintiff's earning potential.

31. Furthermore from July 2005 until June 2006, the department of psychiatry implemented several inappropriate stalling tactics including misrepresentations and circuitous letter writing to delay filling out a simply hospital affiliation form on behalf of plaintiff (Exhibits to be shown at a later time).

32. After approximately one year of attorney Varady representing the plaintiff without much time to devote to it, plaintiff ultimate sought to represent herself along with two other representatives. When they tried to re-initiate arbitration they were met with stiff resistance from HRP. HRP proceeded with its well established pattern of convoluted letter writing laden with inaccuracies. In their letter dated March 31, 2006, on page 6, it was stated Dr. Jones failed to identify an easily diagnosable pneumonia (of an infant) who was admitted to Queen's Pediatric Intensive Care Unit. Obviously the pneumonia was not easily recognizable as the pediatric program director was unsure of the diagnosis and consequently consulted with a cardiologist. This never occurs in clear cut pneumonia. When the infant is question was admitted to Kapiolani Women and Children Medical Center (of note, HRP listed the wrong hospital) the chest x-ray was read by the radiologist as clear (as in free from pneumonia) and at the time of discharge the infant never officially received a diagnosis of pneumonia. The letter also intimated that it was the attending physician who detected the error, thereby, preventing a death. This is a false written accusation that has been perpetuated in several letters including a letter to the

Hawaii Board of Medical Examiners. A true and accurate copy is attached as **Exhibit Y**.

33. In addition to being responsible for false written accusations, the chair of the department of psychiatry has been slanderous in that she stated, Lillian "almost killed a baby."

34. By letter dated April 17, 2006, Goodsill et. al law partnership wrote on behalf of defendants HRP a letter to the representative from Dispute Prevention Resolution incorrectly misrepresenting plaintiff's attempt to re-invoke arbitration. This is a clear example of a continued pattern of misrepresenting facts. A true and accurate copy is attached as **Exhibit Z**)

35. The CEO of Dispute Prevention Resolution responded to HRP's inaccuracies of plaintiff's attempt at re-invoking arbitration. A true and accurate copy is attached as **Exhibit AA.**

36. After plaintiff finally accepted not finishing her medical specialty training (property right) in Hawaii (liberty right), she entered the Child and Adolescent Psychiatry training match late (submitting applications beyond the deadline) in the fall of 2006, only to be told over the phone on December 19, 2006, by a chairman of the department of psychiatry of a training program on the mainland that given plaintiff's story "no one is going to touch you with a ten foot pole", especially without a letter from the former residency program.

37. Defendants Naleen Andrade, M.D. and Courtenay Matsu, M.D., are the chairperson and adult psychiatry program director respectively of the corporate defendants and are the only remaining employees of the University of Hawaii who are named in this lawsuit who continued to impede plaintiff's attempt to earn a living by

practicing medicine and defamed plaintiff's professional reputation. They are agents of the state who have abused their authority to interfere with the plaintiff's property and liberty rights that are guaranteed protection of the United States Constitution.

## COUNT I

## Deprivation of Constitutionally protected property and liberty rights.

38. The allegations in paragraphs 1 through 37 above are re-alleged and incorporated in this claim.

39. Property rights were violated as the Constitution provides protection for rights that supercede more than a person having an abstract need but an entitlement to as in a resident physician having the right to complete one's residency without arbitrary dismissal at the institution of one's choice {which is} indeed, an important right when considered in connection with a physician's career path.

40. The Constitution recognizes a government employee's "liberty" right to be free from stigmatizing disciplinary action. Stigmatizing actions include charges that could damage the plantiff's standing in the community as well as those that might foreclose the opportunity to take advantage of other employment prospects.

41. Substantive Due Process was violated as conduct disregarding false accusation by pediatric program director and overriding hearing panel's recommendation was "so outrageously arbitrary as to constitute a gross abuse of governmental authority."

## COUNT II
### Intentional Tort Claims

42. The allegations in paragraphs 1 through 41 above are realleged and incorporated in this claim.

43. The claims set forth in this Count II are within the supplemental jurisdiction of this Court as provided in 28 U.S.C. § 1367.

44. Defendants of the department of psychiatry, Naleen Andrade, M.D. and Courtenay Matsu, M.D. deliberately tried to, an did, lower the plaintiff's reputation within the medical community by speaking and writing untruths. Barring plaintiff from the department, other clinic sites and revoking a previously extended invitation to the Christmas party was intended to, an did, isolate plaintiff and cause emotional distress. There was also intent to minimize plaintiff's earning potentials by stalling filling out a hospital affiliation form on behalf of plaintiff for almost a year in spite of coercive letters from plaintiff's attorney. When the form was finally filled out there was continued perpetuation of misrepresentations to the medical board. Furthermore, defendant D. Christopher Derauf provided fraudulent testimony at the in-housing hearing that has altered plaintiff's career path.

45. As a direct and proximate result of this intentional conduct by defendants, plaintiff has suffered monetarily and emotionally.

WHEREFORE plaintiff prays that judgment be entered in her favor and against the defendants as follows:

A. Derogatory information expunged from record

B. Economic loss in the amount of a conservative figure of $675,000.00 of earnings lost as a result of not completing training and still having to complete child and adolescent training. Plaintiff's ability to practice as a child and adolescent psychiatrist has been extended by at least four and a half years for delayed training and training yet to be completed. Economic loss was calculated based upon conservative starting salary of $150,000.00/year for a Child and Adolescent Psychiatrist x 4.5 years.

C. Non-economic damages in such amount as are appropriate for emotional distress.

D. Punitive damages in such amount as are appropriate for intentional abuse of authority, defamation of character and an attempt to deliberately lower physician's standing within the medical community. Additionally there is a long standing history of arbitrary abuse of power within the department of psychiatry of which several former residents are willing to attest. Punitive damages are sought to deter this behavior.

F. Plaintiff's costs and attorneys' fees, together with such other relief as the Court deems just in the circumstances.

DATED: Honolulu, Hawaii, January 12, 2007.

_____
Lillian M. Jones